IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:22-CR-255 |
| vs. | |
| MAR D. MALUOTH, | MEMORANDUM ORDER ON FINDINGS AND RECOMMENDATION |
| Defendant. | |

### I. INTRODUCTION

This matter is before the Court on United States Magistrate Judge Michael D. Nelson's Findings and Recommendation, recommending that defendant Mar D. Maluoth's Motion to Suppress, Filing 25, be denied. Maluoth has filed objections to Judge Nelson's Findings and Recommendation. Filing 42. For the reasons stated herein, the Court overrules Maluoth's objections, adopts Judge Nelson's Findings and Recommendation in its entirety, and denies Maluoth's Motion to Suppress.

### II. BACKGROUND

Maluoth's Motion to Suppress originates from the stop of a vehicle in which he was a passenger by Officers Dylan Belter and Justin Barnes of the Omaha Police Department. In the evening of September 23, 2022, Detective Ryan Sillman of the Omaha Police Department was surveilling a residence at 3019 Manderson in Omaha, Nebraska, after receiving information that an escapee was residing there. Filing 40 at 6–8. Both Detective Sillman and Officer Belter associate the residence with gang activity and consider the vicinity a "high-crime area" with "numerous shootings." Filing 40 at 8–9. While watching the residence from an unmarked police cruiser, Detective Sillman saw a group of people walking to and from the residence and a Honda

1

Civic parked in an alley behind the residence. Filing 40 at 9–10. One man approached the vehicle with a drum magazine and passed it among other people standing near the Honda Civic. Filing 40 at 10. The Honda Civic then left the alley, where it was subsequently stopped by law enforcement, who located a pound of marijuana and a firearm in the vehicle but did not find the drum magazine. Filing 40 at 10. Officers Barnes and Belter, who were parked near the residence in a marked police cruiser, learned about the stop of the Honda Civic from Detective Sillman. Filing 40 at 25–27.

While he continued surveillance, Detective Sillman saw a black Kia Optima in the alley behind the residence at around 7:30 pm. Filing 40 at 11–12. Another detective on the scene informed Detective Sillman that he witnessed a black male carrying a rifle from the residence to the alley, but because it was dark outside he was not sure if the man entered the vehicle. Filing 40 at 11–12. When the Kia Optima pulled out of the alley, Detective Sillman began following it in his unmarked cruiser and observed the vehicle fail to come to a complete stop at a stop sign. Filing 40 at 12–13. Detective Sillman radioed Officers Barnes and Belter about the traffic infraction and advised them that a male believed to be carrying a firearm entered the vehicle before it left. Filing 40 at 27–28. Officers Barnes and Belter then pulled the Kia over for failing to stop at the stop sign. Filing 40 at 28–29.

After the Kia stopped, Officer Barnes walked to the driver's side door while Officer Belter approached the passenger side. Filing 40 at 31. Officer Belter proceeded cautiously because of the information he had received about a male possibly with a firearm in the vehicle. Filing 40 at 30–31. As he approached the vehicle, he saw an individual in the front passenger seat, later identified as defendant Maluoth, reaching and leaning forward. Filing 40 at 30. When Officer Belter arrived at the front passenger window, Maluoth turned his body towards the driver and reached towards the center area of the vehicle. Filing 40 at 31. According to Officer Belter, he became concerned

2

for the safety of himself and the occupants of the vehicle because Maluoth was making furtive movements and canting his body away from Officer Belter. Filing 40 at 30–33. Officer Belter explained that, based on his years of law-enforcement experience, Maluoth's furtive movements were consistent with an individual trying to hide contraband or weapons and Muluoth canting his body away would have helped conceal a firearm on his hip or in a front pocket. Filing 40 at 31–33. Officer Belter knocked on the window and told Maluoth to stop reaching, but Maluoth rolled up his window, began using his phone, and ignored Officer Belter. Filing 40 at 31–32. As Maluoth began reaching inside his front sweatshirt pocket, Officer Belter opened the front passenger door, removed Maluoth from the vehicle, handcuffed him, and performed a pat-down search. Filing 40 at 31–33. Time stamps from the police cruiser's recording of the stop show that Officer Belter removed Maluoth from the vehicle less than two minutes into the traffic stop. *See* Ex. 1 at 7:29:16–7:30:49.

After placing Maluoth in another police cruiser that had arrived, Officer Belter returned to the Kia and looked in the immediate area where Maluoth had been sitting. Filing 40 at 35. Underneath the front passenger seat was a Glock handgun. Filing 40 at 35. The Glock handgun had been modified into an automatic firearm. Filing 40 at 35.

### III.  ANALYSIS

#### A.  Standard of Review

28 U.S.C. § 636(b)(1) governs the different standards of review when a party objects to a pretrial decision or a proposed findings of fact and recommendations by a magistrate judge. *See* 28 U.S.C. § 636(b)(1). When a party objects to a magistrate judge's proposed findings and recommendations, "[a] judge of the court shall make a de novo determination of those portions . . . to which objection is made." *Id.*; *accord Gonzales-Perez v. Harper*, 241 F.3d 633, 636 (8th Cir.

2001) ("When a party timely objects to a magistrate judge's report and recommendation, the district court is required to make a de novo review of the record related to the objections . . . ."). The reviewing district court judge is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If desired, a reviewing district court judge may "receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.* Under *de novo* review, a reviewing court "makes its own determinations of disputed issues and does not decide whether the magistrate[] [judge's] proposed findings are clearly erroneous." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). *De novo* review is non-deferential and requires an independent review of the matter. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991) ("When de novo review is compelled, no form of appellate deference is acceptable."); *United States v. Backer*, 362 F.3d 504, 508 (8th Cir. 2004) ("'De novo' is a Latin term literally meaning 'as new.' Our review is independent and not premised on the district court's appropriate use of its discretion. We are concerned only with the proper application of the law . . . .").

### B. Objections

Maluoth has filed the following objections to Judge Nelson's Findings and Recommendation: (1) that Detective Sillman's testimony about the traffic violation was credible; (2) that the stop of the vehicle was valid and supported by probable cause; (3) that Officer Belter lawfully removed Maluoth from the vehicle; and (4) that the officers lawfully searched the passenger area of the vehicle. Filing 42 at 1. The Government opposes Maluoth's objections. Filing 44. The Court addresses each objection in turn and overrules them.

1. *Credibility Finding*

Maluoth first challenges Judge Nelson finding credible Detective Sillman's testimony about the traffic violation. Filing 43 at 2. Detective Sillman testified that he followed Maluoth's vehicle over a considerable distance—twenty to twenty-five blocks—before seeing the traffic violation and pulling over the Defendant. Filing 40 at 21. Maluoth argues that the officers had an interest in pulling over the vehicle given their surveillance of a nearby residence and points out that there is no recording of the vehicle failing to stop at a stop sign. Filing 43 at 2. To the contrary, probable cause to effectuate a traffic stop is not dependent on the existence of a video recording and may rest on officer testimony alone. *See United States v. Beard*, 708 F.3d 1062, 1066 (8th Cir. 2013) (noting that the video recording did not show the traffic violation because of its poor quality and holding that the district court did not clearly err in crediting the officer's testimony); *United States v. Ramos-Caraballo*, 375 F.3d 797, 801 (8th Cir. 2004) (affirming denial of motion to suppress based solely on officer testimony of traffic violation). The Court declines Maluoth's invitation to find Detective Sillman's testimony untrustworthy simply because he was searching for an escapee at the nearby residence. Maluoth points to nothing in Detective Sillman's testimony that would cast doubt on his truthfulness. Maluoth's objection to Judge Nelson's credibility finding is overruled.

2. *The Stop of the Vehicle*

Maluoth's objection to the stop of the vehicle depends on Detective Sillman's credibility because officers may lawfully stop a vehicle after witnessing a traffic violation. *See United States v. Milk*, 66 F.4th 1121, 1131 (8th Cir. 2023) ("Any traffic violation, however minor, provides probable cause for a traffic stop." (quoting *United States v. Wright*, 512 F.3d 466, 471 (8th Cir. 2008))). As the Court already concluded, Detective Sillman credibly testified that he witnessed

Maluoth's vehicle failing to stop at a stop sign, which is a violation of Nebraska law. *See* Neb. Rev. Stat. § 60-6,148(2); Neb. Rev. Stat. § 60-667. Therefore, the stop was lawful. Maluoth's objection concerning the stop of the vehicle is overruled.

3. *Removal of Maluoth from the Vehicle*

Maluoth also contends that Officer Belter unlawfully removed him from the vehicle and detained him. Filing 43 at 1. The Court disagrees. Law enforcement officers may take several steps to protect their safety during a traffic stop, such as ordering occupants out of a vehicle, performing pat-down searches for weapons, detaining individuals, and using force. *See United States v. Stevenson*, 66 F.4th 1143, 1145–46 (8th Cir. 2023); *United States v. Halverson-Weese*, 30 F.4th 760, 764–65 (8th Cir. 2022). While an officer can order a passenger like Maluoth out of a vehicle "as a matter of course," *see United States v. Gonzaelez-Carmona*, 35 F.4th 636, 640 (8th Cir. 2022), other actions require officers to "have an objectively reasonable suspicion the person is armed and presently dangerous" and may go no further than what is "reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *Halverson-Weese*, 30 F.4th at 764. "Objectively reasonable suspicion" requires "specific, articulable facts," which courts evaluate by looking "at the totality of the circumstances, allowing officers to draw on their experience and training." *Id.* (quoting *United States v. Lawhorn*, 735 F.3d 817, 820 (8th Cir. 2013)).

Officer Belter had an objectively reasonable suspicion that Maluoth was armed and presently dangerous and removing Maluoth from the vehicle was reasonably necessary to protect the personal safety of himself, Officer Barnes, and the other occupants in the vehicle. Officer Belter was aware that the residence from which the vehicle left was associated with gang activity and that the area had suffered multiple shootings. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("[T]he

fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a *Terry* analysis."); *United States v. Sanders*, 510 F.3d 788, 790 (8th Cir. 2007) (noting that the stop occurred in a "high-crime area"). Before pulling over Maluoth's vehicle, Detective Sillman informed Officer Belter that a possibly armed individual had entered the vehicle. *See United States v. Payne*, 534 F.3d 948, 952 (8th Cir. 2008) (stating that the officer being informed by dispatch that the defendant was armed and dangerous added to the officer's suspicion during the traffic stop); *United States v. Davis*, 471 F.3d 938, 945 (8th Cir. 2006) (holding that "prior intelligence" that the defendant possessed firearms was an articulable fact "indicat[ing] a danger to officer safety"). As Officer Belter approached the passenger side of the vehicle, he observed Maluoth learning forward and making furtive movements that, in Officer Belter's experience, were consistent with someone attempting to hide weapons or contraband. *See Halverson-Weese*, 30 F.4th at 764 (noting that the defendant "made furtive movements while seated in the car"). When Officer Belter arrived at the front passenger window, Maluoth leaned away from him and disregarded Officer Belter's orders to stop reaching. *See id.* (highlighting that the defendant "refused to comply with officers' orders during the stop"). Maluoth then began reaching into his front sweatshirt pocket, causing Officer Belter to remove Maluoth from the vehicle. *See United States v. Williams*, 39 F.4th 1034, 1042 (8th Cir. 2022) (holding that the defendant "repeated[ly] reaching towards his front pocket despite [the officer's] commands not to" properly contributed to the officer having reasonable suspicion that the defendant might be armed). Under the totality of the circumstances, Officer Belter had an objectively reasonable suspicion that Maluoth was armed and presently dangerous and acted reasonably to protect his and other people's safety by removing Maluoth from the vehicle. Maluoth's objection on this issue is overruled.

*4. Search of the Passenger Area*

Maluoth's final objection is to Judge Nelson's conclusion that officers lawfully searched the passenger area of the vehicle. In his Findings and Recommendation, Judge Nelson stated that Officer Barnes "was permitted to search the passenger area of the Kia for weapons" after detaining Maluoth. Filing 41 at 7. The Court agrees. Officer Belter had witnessed Maluoth reaching and leaning forward and making movements consistent with hiding weapons. As previously mentioned, Officer Belter had an objectively reasonable suspicion that Maluoth was armed and presently dangerous. The driver of the vehicle was still interacting with Officer Barnes when Maluoth was removed, and there were other people in back of the vehicle. Caselaw is clear that upon securing Maluoth, Officer Belter could search the passenger area for weapons that the vehicle's other occupants could access. *See Williams v. Decker*, 767 F.3d 734, 740 (8th Cir. 2014) ("[A]fter securing a suspect, officers may also conduct a protective sweep of the vehicle's passenger compartment to search for dangerous weapons that the suspect or other occupants might later access." (quoting *United States v. Smith*, 645 F.3d 998, 1002 (8th Cir. 2011))). Less than four minutes passed between the stop and Officer Belter searching the passenger area. Such a short period of time shows that Officer Belter did not extend the stop beyond what was necessary to finish handling the traffic infraction and address any safety concerns. *See United States v. Allen*, 43 F.4th 901, 907 (8th Cir. 2022) (explaining that officers may continue a stop for time necessary "to attend to the stop's mission and related safety concerns" (internal quotation marks omitted) (quoting *United States v. Soderman*, 983 F.3d 369, 374 (8th Cir. 2020))). Maluoth's objection to the search is overruled.

## IV. CONCLUSION

For these reasons, the Court overrules Maluoth's objections, adopts Judge Nelson's Findings and Recommendation in its entirety, and denies Maluoth's Motion to Suppress. Accordingly,

IT IS ORDERED:

1. Mar D. Maluoth's Objections, Filing 42, are overruled;

2. Judge Michael D. Nelson's Findings and Recommendation, Filing 41, is adopted in its entirety; and

3. Mar D. Maluoth's Motion to Suppression, Filing 25, is denied.

Dated this 8th day of June, 2023.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge