IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:22-CR-255 |
| vs. | |
| MAR D. MALUOTH, | ORDER ON MOTION IN LIMINE |
| Defendant. | |

This matter is before the Court on defendant Mar D. Maluoth's Motion in Limine, Filing 47, which requests that the Court limit the testimony of law enforcement officers the Government intends to offer in its case-in-chief at trial. The Government opposes Maluoth's Motion. Filing 59. For the reasons stated herein, the Court grants the Motion in part and denies it in part.

The Court has some familiarity with the facts of this case having handled Maluoth's prior Motion to Suppress. In brief, Detective Ryan Sillman of the Omaha Police Department was surveilling a residence at 3019 Manderson in Omaha, Nebraska, with other officers while searching for an escapee. Filing 40 at 6–8. Officers Dylan Belter and Justin Barnes of the Omaha Police Department were waiting nearby in a marked police cruiser. Filing 40 at 25–27. As represented in the Defendant's brief supporting his Motion in Limine, the officers and Detective Sillman are associated with the police department's "Gang Unit." Filing 48 at 1–2. At the suppression hearing, Detective Sillman and Officer Belter explained that they associate the residence officers were surveilling with gang activity and consider the vicinity a "high-crime area" with "numerous shootings." Filing 40 at 8–9.

Surveilling officers spotted a group of people walking to and from the residence and a Honda Civic, one of whom was a man with a "drum magazine" who passed it among other people

1

standing nearby. Filing 40 at 9–10. After the Honda Civic left the alley, law enforcement stopped it and officers discovered marijuana and a firearm but not the drum magazine. Filing 40 at 10.

An hour to an hour-and-a-half later, at around 7:30 p.m., Detective Sillman saw a black Kia Optima in the alley behind the residence. Filing 40 at 11–12. Another surveilling detective informed Detective Sillman that he witnessed a black male carrying a rifle from the residence to the alley, but was not sure if the man entered the vehicle because of how dark it was outside. Filing 40 at 11–12. When the Kia Optima left the alley, Detective Sillman followed it for about twenty to twenty-five blocks in his unmarked cruiser before witnessing the vehicle fail to come to a complete stop at a stop sign. Filing 40 at 12–13. Detective Sillman radioed Officers Barnes and Belter about the traffic infraction and advised them that a male believed to be carrying a firearm entered the vehicle before it left. Filing 40 at 27–28. Officers Barnes and Belter than pulled the Kia over in their marked police cruiser. Filing 40 at 28–29.

During the stop, Officer Belter approached the front passenger side of the Kia, where Maluoth was sitting. Filing 40 at 30–31. Based on Maluoth's actions during the stop and the fact that Officer Belter had been warned of an armed male in the vehicle, Officer Belter removed Maluoth from the vehicle and detained him. Filing 40 at 30–33. A subsequent search of the front passenger side of the vehicle uncovered a Glock handgun which had been modified into an automatic firearm. Filing 40 at 35.

In his Motion in Limine, Maluoth requests that the Court exclude the following evidence: (1) that law enforcement were surveilling a particular address because they had information an escapee was at that address; (2) that the address was in a high crime area with gang activity and prior firearm related events; (3) that the police observed people and vehicles coming and going int the alley behind the address and possibly in possession of firearms or ammunition of magazines,

(4) that the police officers involved were in the police departments "gang suppression unit;" (5) that law enforcement had prior encounters at the residence being surveilled involving shots fired incidents; and (6) that law enforcement had prior contacts with gang members in the alley behind the residence. Filing 47 at 1–2. In his brief support his Motion, Maluoth argues that the evidence and testimony in the Government's case-in-chief should be limited to the traffic stop of the Kia and the discovery of the Glock handgun. Filing 48 at 2. Maluoth asserts the information he seeks to exclude is not relevant and its use at trial is substantially outweighed by the danger of unfair prejudice. Filing 48 at 2. The Government responds that it intends to have Detective Sillman testify about why he was at the residence, what he was looking for, and what he observed immediately before Maluoth's vehicle was pulled over as part of the *res gestae* of Maluoth's alleged criminal activity. Filing 59 at 4–5. The Government represents that it does not intend to elicit testimony that Maluoth is a gang member or associated with gang activity. Filing 59 at 5. Nevertheless, the Government does not state either way whether it will elicit testimony that the residence officers were surveilling is associated with gang activity, that the area has experienced numerous shootings, or that officers were part of the police department's gang suppression unit.

"*Res gestae*, also known as intrinsic evidence, is 'evidence of wrongful conduct other than the conduct at issue . . . offered for the purpose of providing the context in which the charged crime occurred.'" United States v. Parks, 902 F.3d 805, 813 (8th Cir. 2018) (omission in original) (quoting United States v. Campbell, 764 F.3d 880, 888 (8th Cir. 2014)). Such evidence is admissible to complete the story or provide a total picture of the charged crime, give context, or help fill gaps in the jury's understanding of the alleged crime. See United States v. White Plume, 847 F.3d 624, 628 (8th Cir. 2017); United States v. Young, 753 F.3d 757, 770 (8th Cir. 2014). The scope of the *res gestae* can include "the events immediately preceding the defendant's arrest, as

3

well as the circumstances of the arrest itself." *United States v. Richardson*, 40 F.4th 858, 867 (8th Cir. 2022) (quoting *United States v. LaDue*, 561 F.3d 855, 857–58 (8th Cir. 2009). Nonetheless, intrinsic evidence, like all evidence, is still subject to Federal Rule of Evidence 403's balancing test. *See United States v. Watley*, 46 F.4th 707, 714 (8th Cir. 2022); Fed. R. Evid. 403 (providing that a court may exclude evidence if "its probative value is substantially outweighed by a danger of . . . unfair prejudice").

The Court begins with whether evidence that the residence under surveillance being in a high crime area with gang activity and prior firearm related events, that law enforcement had prior encounters at the residence involving shots fired incidents, and that law enforcement had prior contact with gang members in the alley behind the residence should be excluded. While gang-related evidence is admissible "if it is relevant to a disputed issue in the case," *United States v. Shelledy*, 961 F.3d 1014, 1020–21 (8th Cir. 2020), "[g]ang evidence cannot be used 'if its purpose is solely to prejudice the defendant or prove his guilt by association with unsavory characters.'" *United States v. Parker*, 871 F.3d 590, 600 (8th Cir. 2017) (quoting *United States v. Gaines*, 859 F.3d 1128, 1131 (8th Cir. 2017)). "[G]eneral evidence as to gang culture, aimed at simply establishing a violent or lawless culture, is often unduly prejudicial and can be irrelevant." *United States v. Payne-Owens*, 845 F.3d 868, 873 (8th Cir. 2017). The Eighth Circuit Court of Appeals has indicated that evidence about gang activity is less likely to be admissible when it does not concern the defendant's own gang membership and emphasized that, in general, gang evidence is allowed when it is "an *unavoidable incident* of presenting other permissible evidence." *United States v. Street*, 548 F.3d 618, 632 (8th Cir. 2008) (emphasis in original). That being said, "generic and fleeting testimony" about gang activity can be admissible as intrinsic evidence to "provide a total picture" of the events surrounding the charged crime. *Payne-Owens*, 845 F.3d at 872.

4

Although the Government has not explicitly stated that it wishes to elicit such testimony, the Court agrees with Maluoth that testimony that the residence officers were surveilling was in a high crime area with gang activity and prior firearm related events, that law enforcement had prior encounters at the residence involving shots fired incidents, and that law enforcement had prior contact with gang members in the alley behind the residence should be excluded. Such evidence does not concern Maluoth's own gang membership, if any, nor is it an "unavoidable incident of presenting other permissible evidence." *Street*, 548 F.3d at 632 (emphasis removed). Suggesting that the residence from which Maluoth's vehicle came was associated with "gang activity" and firearm related events could also run the risk of suggesting to the jury that Maluoth was a gang member because he left a residence associated with "gang activity."

The Court disagrees with Maluoth, however, that the officers should not be able to identify themselves as members of the police department's gang suppression unit, assuming the Government wishes to elicit such testimony. Law enforcement frequently identify their task force or unit as a routine part of giving testimony. A passing and fleeting reference to an officer's task force or unit does not remotely imply that Maluoth is a member of a gang or associates with "unsavory characters." Therefore, if the Government wishes to have officers identify their task force or unit, such testimony is admissible.

The Court concludes evidence that law enforcement was surveilling a particular address because they had information an escapee was at that address is admissible. While Maluoth argues that the Government should be limited to beginning its case in chief at the moment the vehicle Maluoth was riding in was pulled over, the *res gestae* of the charged crime is not so narrow. The jury is entitled to hear why officers were located where they were, why Maluoth's vehicle was followed and pulled over, and other evidence that helps explain the officers' actions. *See United*

States v. Strong, 826 F.3d 1109, 1115 (8th Cir. 2016) ("A jury is entitled to know the circumstances and background of a criminal charge. It cannot be expected to make its decisions in a void–without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." (quoting United States v. Moore, 735 F.2d 289, 292 (8th Cir. 1984)); cf. LaDue, 561 F.3d at 858 (holding that the court did not abuse its discretion in admitting evidence that the officer was responding to a "shots fired" report because it explained the officer's actions of leaving his patrol car, chasing a man down a street, and drawing his weapon). Therefore, as the Government represents in its brief, Detective Sillman will be permitted to explain that he was searching for an escapee, that the investigation led him to the residence the officers were surveilling, and what was observed immediately before the vehicle Maluoth was a passenger in was pulled over.

Accordingly,

IT IS ORDERED that defendant Mar. D. Maluoth's Motion in Limine, Filing 47, is granted in part and denied in part.

Dated this 14th day of July, 2023.

BY THE COURT:

Brian C. Buescher
United States District Judge